**LYNCHBURG GAS COMPANY,
Petitioner,**

**v.**

**FEDERAL POWER COMMISSION,
Respondent.**

**Nos. 13170, 13285.**

United States Court of Appeals
Third Circuit.

Argued Oct. 17, 1960.

Decided Nov. 23, 1960.

Rehearing Denied Dec. 19, 1960.

Phebe Eppes Gordon, Alexandria, Va. (Harry S. Littman, Jack Werner, Dale A. Wright, Harold L. Talisman, Washington, D. C., on the brief), for petitioner.

Peter H. Schiff, Washington, D. C. (Howard E. Wahrenbrock, Solicitor, Luke R. Lamb, Asst. General Counsel, Washington, D. C., on the brief), for respondent.

Richard A. Rosan, New York City (William C. Hart, Daniel L. Bell, Jr., New York City, William Anderson, Pitts-

burgh, Pa., on the brief), for Manufacturers Light & Heat Co., intervenor.

Before McLAUGHLIN, KALODNER and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

Petitioner, Lynchburg Gas Company (hereafter referred to as Lynchburg) has filed two separate petitions for review under Section 19(b) of the Natural Gas Act, 15 U.S.C.A. § 717r(b) seeking review of certain orders made by the Federal Power Commission in a rate proceeding involving The Manufacturers Light and Heat Company (hereafter referred to as Manufacturers).

In the first of the petitions, Docket No. 13,170, Lynchburg contends it is aggrieved by two orders of the Commission, one dated November 18, 1959, which denied petitioner the right to intervene in the Manufacturers' rate proceeding, and the other dated December 30, 1959, which allowed Lynchburg to intervene and participate in that cause "henceforth". In addition to responding to the arguments on the merits, the Commission and Manufacturers have filed motions to dismiss for lack of jurisdiction.

In the second petition, Docket No. 13,285, Lynchburg seeks review of the final order in the Manufacturers' action asserting it is aggrieved by the decision itself as well as by the Commission's determinations on its petition to intervene. This second petition is before the court on motion to dismiss for lack of jurisdiction.

Lynchburg is a Virginia corporation engaged in purchasing, distributing and selling natural gas in Lynchburg, Virginia and other surrounding areas. It purchases its total natural gas requirement from Atlantic Seaboard Corporation, a subsidiary of the Columbia Gas System, Inc. (hereafter referred to as Columbia). Manufacturers is also a subsidiary of Columbia, but Lynchburg does not buy, either directly or indirectly, any

gas from Manufacturers. Except for the fact that Manufacturers and Atlantic Seaboard Corporation are both subsidiaries of Columbia, there is no connection between Lynchburg and Manufacturers.

On various dates, Manufacturers, Atlantic Seaboard Corporation, and several other Columbia subsidiaries made simultaneous rate filings with the Federal Power Commission.[1]

On September 3, 1959, the Commission issued a "Notice of Date of Hearing", in two of the filed rates of Manufacturers.[2] Lynchburg gave timely notice to intervene, but at the date set for the beginning of the hearing before the examiner, September 30, 1959, Lynchburg's petition to intervene had not been passed upon by the Commission. Nevertheless, the examiner, in order to expedite the hearing, granted Lynchburg full rights of participation until such time as the Commission should act upon its petition.

As the situation developed, the sole point, not susceptible of settlement through negotiation was "rate of return" between Manufacturers and its customers. Lynchburg was not interested in any of the questions upon which there would be settlement, but only in the contested issue. After several days of hearing spread over one and a half months, the direct case of Manufacturers and rebuttal thereto had been fully heard. During a recess after that, the Commission denied Lynchburg's petition to intervene. Thereafter, on November 19, 1959, Lynchburg did not appear and did not participate in the hearing when cer-

[1] As reproduced in appellant's brief, the filings were as follows:

*February 13, 1957*

| | |
|---|---|
| United Fuel Gas Company | Docket No. G-12195 |
| Atlantic Seaboard Corporation | Docket No. G-12196 |
| The Manufacturers Light and Heat Company | Docket No. G-12197 |
| Home Gas Company | Docket No. G-12198 |
| Kentucky Gas Transmission Corporation | Docket No. G-12199 |

*August 20, 1958*

| | |
|---|---|
| Atlantic Seaboard Corporation | Docket No. G-16401 |
| Home Gas Company | Docket No. G-16402 |
| Kentucky Gas Transmission Corporation | Docket No. G-16403 |
| The Manufacturers Light and Heat Company | Docket No. G-16404 |

*October 7 and 9, 1958*

| | |
|---|---|
| United Fuel Gas Company | Docket No. G-16815 |
| Kentucky Gas Transmission Corporation | Docket No. G-16816 |
| Atlantic Seaboard Corporation | Docket No. G-16817 |
| Home Gas Company | Docket No. G-16819 |
| The Manufacturers Light and Heat Company | Docket No. G-16820 |

*April 10, 1959*

| | |
|---|---|
| United Fuel Gas Company | Docket No. G-18420 |
| Kentucky Gas Transmission Corporation | Docket No. G-18421 |
| Atlantic Seaboard Corporation | Docket No. G-18422 |
| Ohio Fuel Gas Company | Docket No. G-18423 |
| Home Gas Company | Docket No. G-18424 |
| The Manufacturers Light and Heat Company | Docket No. G-18425 |

*June 24, 1959*

| | |
|---|---|
| The Manufacturers Light and Heat Company | Docket No. G-19250 |

[2] The original notice listed two dockets (No. G-12197, No. G-16404), that would be heard. Subsequently, by order issued September 23, 1959, the Commission also consolidated two other dockets (No. G-16820, No. G-18425), with the original consolidated docket. Then during the course of the hearing on November 5 and 6, 1959, by another Commission order, Docket No. G-19250 was added to the proceeding, and Docket No. G-16404, was severed.

-tain documentary evidence upon which there had been oral testimony and the .settlement agreement between Manufacturers and its customers were formally introduced into evidence. The hearing was recessed with the only remaining matter being the filing of briefs and the oral argument on January 7, 1960. During the interim period Lynchburg filed its petition for rehearing and on December 30, 1959, the Commission reversed its previous order stating:

> "Upon consideration of the aforementioned application, we find that Lynchburg should be permitted to intervene and participate henceforth in the proceedings in Docket No. G–12197."

Lynchburg filed a motion for continuance to change the date set for oral argument, which was denied by the Commission. Lynchburg did not submit a brief or participate in the oral argument. Subsequently, a final order was entered on February 25, 1960.

In Docket No. 13,170, we are immediately confronted with the problem of jurisdiction to review the Commission's order denying intervention. The applicable statute is Section 19(b) of the Natural Gas Act, 15 U.S.C.A. § 717r(b), which provides in part:

> "(b) Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the circuit court of appeals of the United States * * * by filing in such court, within sixty days after the order of the Commission upon the application for rehearing a written petition praying that the order of the Commission be modified or set aside in whole or in part."

█ █ As a primary requisite for judicial review, the statute dictates mandatory compliance with the doctrine of exhaustion of administrative remedies, as well as compliance with the required showing of a *party* who is *aggrieved* by a Commission order. See F. P. C. v. Colorado Interstate Gas Co., 1955, 348 U.S. 492, 75 S.Ct. 467, 99 L.Ed. 583; Natural Gas Pipeline Co. v. Federal Power Comm., 3 Cir., 1958, 253 F.2d 3, 9. In Docket No. 13,170, Lynchburg seeks direct review of the Commission's order, made during the proceedings denying its petition for intervention. As a general rule, such intermediate orders cannot be reviewed on an interlocutory basis, but may be considered on appeal from the final order in the proceeding. Federal Power Comm. v. Metropolitan Edison Co., 1938, 304 U.S. 375, 58 S.Ct. 963, 82 L.Ed. 1408; United Gas Pipe Line Co. v. Federal Power Commission, 3 Cir., 1953, 206 F.2d 842. Notwithstanding the general applicability of the above rule, Lynchburg asserts that under the authority of a recent decision of the District of Columbia Court of Appeals, Public Service Commission of New York v. F. P. C., 284 F.2d 200, it is aggrieved and can obtain review of the order denying intervention. We find a material factual distinction between that case and the one at bar.

█ In Public Service Commission of New York the petition to intervene was not only denied originally, but also on rehearing. Thus the court was faced with the choice of either granting a right of review from the *final* order denying intervention, or refusing review and thereby rendering the decision of the Federal Power Commission on the petition to intervene unreviewable, since in its opinion the court indicated that the would-be intervenor had no standing to review the final order.[3] In the instant matter, if these facts were present, we

3. As stated by the court in the Public Service Commission of New York case, supra, 234 F.2d 200, 204:
  "We are of opinion that a would-be intervenor whose application to intervene has been denied is not a party to the full proceeding upon the merits and is not aggrieved, within the statutory meaning, at the time or upon the occasion of the entry of the final order by the Commission upon the merits. Such a person has not been a party to the proceeding upon the merits. He has not participated in the making of the record upon which such a final order is predicated."

would have no hesitancy in allowing direct review of the order denying Lynchburg's petition to intervene. Lynchburg's right to represent its interest before the Commission would have been finally determined. But actually although initially the Commission denied Lynchburg's petition to intervene, its rights in the proceeding were not *finally* determined. By subsequent order on rehearing, the Commission negated the effect of its first order and allowed Lynchburg to appear as a party. Being a party, Lynchburg had the right to petition for review from the final order. So that if Lynchburg was aggrieved by the way the Commission handled its petition to intervene it can obtain proper relief on review of the final order.

Contrary to Lynchburg's argument in its brief that: "The Commission should not be permitted to thwart the jurisdiction of a reviewing court merely by wording an order in such a way as to render the order complained of not immediately reviewable while still maintaining the practical effect of that order," it is evident that by providing for mandatory application for rehearing before the Commission, Congress contemplated situations where the Commission on reconsideration would have the opportunity of correcting a previous order if necessary.[4] In a situation as is indicated here, the effect of the Commission's order is not to thwart appellate jurisdiction but merely to place review in its proper setting, i. e., from a final order in the action.

Accordingly the motion to dismiss in Docket No. 13,170 is granted.

■ In Docket No. 13,285, Lynchburg's petition for review is from the final order. The prime question is whether Lynchburg had the right to intervene. If Lynchburg was wrongfully denied intervention, then it is aggrieved within the meaning of Section 19(b) of the Natural Gas Act and this court has jurisdiction to review the Commission's determi-

nation. National Coal Ass'n v. Federal Power Commission, 1951, 89 U.S.App. D.C. 135, 191 F.2d 462, 467.

■ Section 15(a) of the Natural Gas Act, 15 U.S.C.A. § 717n(a), grants to the Commission power to promulgate rules and regulations dealing with intervention. Pursuant to that statutory authorization, Section 1.8(b) (2) of the Commission's Rules and Regulations, 18 C.F. R. § 1.8(b) (2), defines the basis for granting intervention as:

"(2) An interest which may be directly affected and which is not adequately represented by existing parties and as to which petitioners may be bound by the Commission's action in the proceeding (the following may have such an interest; consumers served by the applicant, defendant, or respondent; holders of securities of the applicant, defendant, or respondent; and competitors of the applicant, defendant, or respondent)."

Under this section, as a minimum requirement to assert and sustain a right of intervention, there must be a showing that some interest of the petitioner will be directly affected. Memphis Light, Gas & Water Div. v. Federal Power Comm., 1957, 100 U.S.App.D.C. 205, 243 F.2d 628; National Coal Ass'n v. Federal Power Commission, supra.

■ In the pending petition, Lynchburg's alleged right to intervene is predicated on the theory that a decision in the Manufacturers' rate proceeding might create an adverse precedent as to subsequent proceedings between Lynchburg and its direct supplier—Atlantic Seaboard Corporation. To bolster this, Lynchburg asserts:

"* * * the Commission, having once determined the proper rate of return for one Columbia System subsidiary, has applied that identical rate of return to all of the other sub-

4. "The policy requiring a party to seek a rehearing is to enable the agency to take corrective action before judicial review, thus possibly rendering the latter

unnecessary." Public Service Commission of New York v. F. P. C., supra, 284 F.2d 200, 207.

sidiaries. Thus, as a practical matter, a determination of the issues involved in the Manufacturers' case would be dispositive of the identical and common issues involved in the pending filings of Atlantic Seaboard, Petitioner's immediate supplier. If Petitioner is to be heard at all on the issues in the pending rate cases of Atlantic Seaboard and its supplier United Fuel, Petitioner must be heard in the proceeding below in which the Commission will first hear and dispose of those issues."

Lynchburg's position is without merit. The setting of the rate of return in the Manufacturers' filing does not preclude Lynchburg from offering such evidence as it may desire in the rate proceedings filed by its direct supplier. Cf. Boston Tow Boat Co. v. United States, 1944, 321 U.S. 632, 633, 64 S.Ct. 776, 88 L.Ed. 975. As clearly stated in the order entered in Manufacturers:

> "(J) *This order is without prejudice to any findings or orders which have been or may hereafter be made by the Commission* and is without prejudice to any claims or contentions which may be made by the Commission, Manufacturers, the Commission staff or any other parties affected by this order in any proceeding now pending or hereafter instituted by or against Manufacturers or any other companies, persons or parties affected by this order." (Emphasis supplied.)

Moreover, an examination of the Manufacturer's record shows that no party there (*including Lynchburg*) considered that the results in that case would be dispositive and binding in any other proceeding wherein the rate of return issue would be contested. In fact, Mr. Shea, Lynchburg's president, answering the presiding examiner's inquiry as to whether Lynchburg would participate in the cross-examination of witnesses, said:

> "We do not intend to participate in the cross-examination of this case. However, we can inform counsel that *we intend to raise the rate of re-*

*turn matter in every other docket involved, where we are a direct customer.*" (Emphasis supplied.)

Lynchburg not having a right to intervene, the motion to dismiss the petition for review in No. 13,285 is granted. This eliminates the necessity of discussing the question of whether in view of the Commission's decisions in first denying and later granting intervention, Lynchburg was denied the rights of a full and fair hearing.